UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

v.

ROBERT CRENSHAW,

*Defendant*.

Criminal No. ELH-18-0069

**MEMORANDUM OPINION**

Defendant Robert Crenshaw is serving a sentence of 204 months (17 years) for armed carjacking committed in September 2017, in which the victim was seriously wounded. ECF 1, ECF 33. Crenshaw, who is now pro se, filed a "Submitted Motion for Compassionate Release" under 18 U.S.C. § 3582(c)(1)(A)(i). ECF 58 (the "Motion"). He asks "to be release[d] under Home Confinement or under Halfway House suppervision [sic] for a compassionate release petition due to the pand[e]mic and under the First Step Act. . . ." ECF 58 at 1 (alterations added). Defendant seeks relief because of his "mental health and medical conditions w[h]ich are Bipolar and anxiety plus as[th]ma[,] Hep B[,] and a[n] enlarge[d] liver . . . ." *Id.* at 1 (alterations added).

The Office of the Federal Public Defender has declined to supplement the Motion. ECF 61. The government opposes the Motion. ECF 71. It is supported by four exhibits. ECF 71-1; ECF 71-2; ECF 71-3; ECF 71-4. The exhibits include defendant's medical records through September 1, 2022. *See* ECF 71-2. Defendant replied. ECF 72.

No hearing is necessary. Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.    Factual and Procedural Background[1]

On February 15, 2018, a federal grand jury returned a two-count Indictment charging Crenshaw with two separate carjackings, in violation of 18 U.S.C. §§ 2119(1) and (2).  ECF 1.  As to the offense of September 15, 2017 (Count Two), the Indictment also alleged serious bodily harm suffered by the victim.  In fact, the victim was stabbed in the abdomen while in the parking lot of a popular restaurant in Baltimore.  *Id.*

On April 22, 2019, pursuant to a Plea Agreement (ECF 25), Crenshaw pleaded guilty to Count Two of the Indictment.  ECF 24.  The plea was tendered under Fed. R. Crim. P. 11(c)(1)(C).  ECF 25, ¶¶ 8, 9.  In particular, the parties agreed to a sentence of 204 months of imprisonment (17 years).  *Id.*

The Presentence Report (ECF 28) reflected an offense level of 32 for both carjackings.  *Id.* ¶ 32.  But, defendant was found to be a career offender under § 4B1.1 of the U.S. Sentencing Guidelines ("Guidelines" or U.S.S.G.").  *Id.* ¶ 33; *see id.* ¶¶ 41, 44, 45.  Therefore, his offense level increased to 34.  *Id.* ¶ 33.  After deductions for acceptance of responsibility, defendant had a final offense level of 31.  *Id.* ¶ 36.

Crenshaw's criminal history dates to age 14.  *Id.* ¶ 38.  At age 16, he was charged with attempted first degree murder (*id.* ¶ 41) and convicted of first degree assault.  *Id.*  Crenshaw's record also included another carjacking offense in 2011.  *Id.* ¶ 45. Defendant was on probation for that offense when the underlying offenses occurred.  *Id.*

Defendant's convictions resulted in a subtotal of 11 criminal history points.  *Id.* ¶ 46. However, two points were added under U.S.S.G. § 4A1.1(d), because defendant committed the

---

[1] Regrettably, this Motion has been pending for quite some time.  Therefore, defendant's medical and disciplinary records are not current.

offenses while on probation for carjacking.  *Id.* ¶ 47.  Therefore, defendant had a total of 13 criminal history points, which resulted in a criminal history category of VI.  *Id.* ¶ 48.  If sentenced today, however, defendant would have 12 points, which equates to a criminal history category of V.  *See* U.S.S.G. § 4A1.1(e).

However, defendant was deemed a career offender, based on the offenses referenced in ECF 28, ¶¶ 41, 44, and 45.  *Id.* ¶ 49.  On that basis, regardless of status points, Crenshaw automatically has a criminal history category of VI, under U.S.S.G. § 4B1.1(b).  *See id.* ¶ 49.

Crenshaw was sentenced on August 9, 2019.  ECF 32.  The Court imposed the agreed upon term of 204 months of imprisonment, followed by five years of supervised release.  ECF 33 (Judgment).

On January 10, 2020, Crenshaw filed an appeal to the United States Court of Appeals for the Fourth Circuit.  ECF 35.  On November 19, 2020, the Fourth Circuit dismissed Crenshaw's appeal as untimely.  ECF 50.

While defendant's appeal to the Fourth Circuit was pending, Crenshaw filed his first pro se motion for compassionate release.  ECF 45.  On January 6, 2021, the Court denied that motion, for failure to exhaust administrative remedies.  ECF 52.  Defendant appealed to the Fourth Circuit, which was dismissed for failure to prosecute.  ECF 76.

Defendant filed the Motion on May 27, 2022.  ECF 58.  A motion to reduce sentence under Amendment 821 followed on September 3, 2024.  ECF 80.  The government opposed the § 821 motion.   ECF 83.  By Memorandum and Order of November 14, 2025, the Court denied Crenshaw's § 821 motion, finding that Amendment 821 does not apply here. ECF 84, ECF 85.

Crenshaw has an array of medical conditions for which he is being treated by the Bureau of Prisons ("BOP").  *See* ECF 71-2. These conditions include, *inter alia*, a history of asthma,

Hepatitis B, and hypertension, as well as bipolar disorder and anxiety. ECF 71-2 at 8, 20, 22, 44, 51. As of 2022, he was prescribed medication for asthma, Hepatitis B, hypertension, and anxiety. *Id*. Crenshaw received the Pfizer vaccine for COVID-19 on February 10 and March 2 of 2021. ECF 71-3 at 1, 2.

As of September 1, 2022, Crenshaw's disciplinary records at the BOP reflect nine incidents, some more serious than others. *See* ECF 71-4. Two are particularly notable. In December 2020, Crenshaw was charged with possession of a dangerous weapon, for which he lost 41 days of good time credit, received 15 days of disciplinary segregation, and lost commissary and telephone privileges for 270 days. *Id*. at 2. In June 2021, Crenshaw was charged with possession of a 7.5 inch sharpened metal weapon. Again, he lost 41 days of good time credit, received 15 days of disciplinary segregation, and lost commissary and telephone privileges for 60 days. *Id.*

Defendant is now 38 years of age, and he is presently incarcerated at USP McCreary in Kentucky. https://www.bop.gov/inmateloc/ (search by name) (last accessed November 17, 2025). Defendant has served approximately 75 months of his 204-month prison sentence, or approximately 37 percent. He has a projected release date of February 18, 2033. https://www.bop.gov/inmateloc/.

## II. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189,

194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, which was first enacted as part of the Sentencing Reform Act of 1984. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). It is commonly termed the "'compassionate release exception.'" *Moody*, 115 F.4th at 310; *see United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (per curiam) (unreported) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release. . . ."). Specifically, 18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court, in its discretion, to reduce a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction,"; "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and the court has considered the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025); *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion made by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see, e.g., Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582

"vests absolute discretion" in the BOP).  However, the safety valve of § 3582 languished, because the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In 2018, with the passage of the First Step Act, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582. *Malone*, 57 F.4th at 173.  In particular, the FSA authorized a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020).  In other words, a federal inmate is now able to file a motion for compassionate release directly with the court, as long as the inmate first exhausts administrative remedies.  *See McCoy*, 981 F.3d at 275–76.  If a defendant has already exhausted administrative remedies upon filing a first motion for compassionate release, the defendant does not need to meet the bar for exhaustion a second time, should the defendant seek to renew the motion. *United States v. King*, 2025 WL 1692747, at *1 (4th Cir. June 17, 2025) (unreported).

However, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence

only if two criteria are satisfied. *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.[2]  Specifically, "the district court must conduct a two-step analysis."  *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step consists of two parts.  The court "must determine: (1) whether extraordinary and compelling reasons warrant. . .a [sentence] reduction; and (2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 115 F.4th at 310; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, 142 S. Ct. 383 (2021).  The court's analysis of these two steps goes hand in hand. *United States v. Burleigh*, 145 F.4th 541, 547 (4th Cir. 2025).  If that first step is met, the court then proceeds to the second step.

Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 115 F.4th at 310; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647; *Kibble*, 992 F.3d at 330.  "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*); *see Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that

---

[2] The Fourth Circuit has said that there are two criteria, and that the first criterion consists of two steps. *See*, *e.g.*, *Malone*, 57 F.4th at 173.  More recently, however, in *Crawley*, 140 F.4th at 169, the Fourth Circuit stated that there are three criteria.  Whether the criteria are counted as two or three, the substance is the same.

a reduction is consistent with the Sentencing Commission's policy statements).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021), *superseded by regulation as stated in Davis*, 99 F.4th 647. Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023) (unreported); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54. However, if there is no applicable policy statement relating to the defendant's compassionate release motion, the court has discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." *Burleigh*, 145 F.4th 541, 548 (cleaned up); *see also United States v. Johnson*, 143 F.4th 212, 215 (4th Cir. 2025) (explaining that, "[i]n the absence of an applicable policy statement, district courts" have the power to "consider *any* extraordinary and compelling reason for release") (cleaned up).

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 981 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in

8

*McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."   Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, . . . § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *Id.* (citation omitted).   As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

Effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)).   The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023) (emphasis added). Therefore, the Policy Statement is applicable to defendant-filed motions under § 3582(c)(1)(A). *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").   As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions.   18 U.S.C. § 3582(c)(1)(A).   The court should apply the Policy Statement that is applicable "at the time the court renders its decision[,]" not at the time the motion is filed.  *Crawley*, 140 F.4th at 170.

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the
defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term
of imprisonment (and may impose a term of supervised release with or without
conditions that does not exceed the unserved portion of the original term of
imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a),
to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or

(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS." It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence. *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency. . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction of, a correctional officer, § 1B1.13(b)(4)(A), (B); and for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed. . . .", § 1B1.13(b)(6).

In deciding whether a defendant has met the ten-year requirement, district courts can only

consider the time a defendant has served in prison and cannot adjust that amount with good-time credits. *Crawley*, 140 F.4th at 172–73.  But, under § 1B1.13(b)(5), the district court may consider "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)."  The capacious language in § 1B1.13(b)(5) underscores that the enumerated circumstances listed in the Policy Statement are not an "exhaustive list" of extraordinary or compelling reasons. *Johnson*, 143 F.4th at 216.  For example, in *Johnson*, the Court affirmed a district court's decision to reduce a defendant's sentence based on the disparity between the defendant's sentence and those of his co-conspirators. *Id.* at 215–16.

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW." It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."  U.S.S.G. § 1B1.13(c). "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction." *Id.*; *see Davis*, 99 F.4th at 654.[3]

---

[3] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act." *Id.* at 500.  However, the Court acknowledged that "Congress or the Constitution [may] limit[ ] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence. . . ." *Id.* at 486.  "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant.  It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence.  That section provides that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d).  "However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*  And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant prisoner establishes that extraordinary and compelling reasons warrant relief, a reduced sentence does not necessarily follow.  The court must then consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *See Dillon*, 560 U.S. at 826–27; *Brown*, 78 F.4th at 128; *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors); *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and

12

compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with...training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). Additionally, the court may consider the "'kinds of sentences available,' and 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Burleigh*, 145 F.4th 541, 548 (quoting 18 U.S.C. § 3553(a)(1), (3), (6)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 F.3d at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion.

*Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018). Moreover, the district court's "discretion is not boundless" and "in exceptional case[s]" the district court can abuse this discretion either by neglecting to "adequately explain how it weighed the § 3553(a) factors" or by "failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*, 2025 WL 1864767, at *3, *4 (4th Cir. July 7, 2025) (unreported) (cleaned up) (finding that the district court abused its discretion by failing to acknowledge how the "multiplicity of factors combine to make the case for compassionate release").

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021). For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).

In any event, as stated, "the court must provide an explanation sufficient 'to allow for

meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190). It is "not difficult" for a district court to satisfy this standard. *Burleigh*, 145 F.4th 541, 550. However, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law. *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."); *see Moody*, 115 F.4th at 310 (recognizing that a defendant may not "challenge the validity of a sentence in a compassionate release" motion but explaining that a court may consider whether a defendant's sentence would be shorter "because of changes in law."). In explaining its compassionate release ruling, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . ." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is informative. The Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6). *Id.* at 654–55. And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range." *Id.* at 661.

According to the *Davis* Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison." *Id.* The Court stated, *id.*: "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)). It concluded that the district

court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial." *Davis*, 99 F.4th at 661 (citing *Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)). As the *Burleigh* Court cautioned, even if a defendant's sentence "would be shorter if issued today," this fact does not "increase the burden on district courts to explain their decision." *Burleigh,* 145 F.4th, 550, 551.

### III. Discussion

### A.  Home Confinement

Defendant asks that he "be release[d] under Home Confinement or under halfway house sup[]ervision." But, only the BOP has the authority to release a prisoner to home confinement. *See* 18 U.S.C. § 3624(c)(2).

Nevertheless, a court could achieve the same result by reducing a defendant's sentence to time-served and then imposing home confinement as a condition of supervised release. Section 3582(c)(1)(A) of 18 U.S.C states: "[T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or *supervised release with or without conditions* that does not exceed the unserved portion of the original term of imprisonment) . . . ." (Emphasis added).

The case of *United States v. Mujo*, No. 1:15-CR-00072-JDL-2, 2023 WL 334381, at *2 (D. Me. Jan. 20, 2023), is instructive. There, the court stated, *id.* (internal citations omitted; emphasis in original): "[T]he district court may not order home confinement in the absence of a sentence reduction. . . . While the court may grant compassionate release to modify a term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1), the Court may not order the remainder of an *unmodified* term of imprisonment to be served at home. Because I have declined to reduce [the defendant]'s sentence, the Court is not authorized to order home confinement pursuant to 18 U.S.C. § 3582(c)(1)."

Similarly, in *United States v. Texeira-Nieves*, 23 F.4th 48, 58–59 (1st Cir. 2022), the First Circuit considered whether the district court correctly determined that it lacked the authority to order home confinement in the context of a motion for compassionate release. *See id.* at 58. The First Circuit concluded, *id.* at 59 (emphasis added): "[S]ection 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his *unmodified* sentence at home." But, the court also recognized that "the district court could reduce a sentence to time served, impose a term of supervised release equal to the unserved portion of the term, and order home confinement as a condition of supervised release." *Id.*

In sum, the Court lacks the authority to compel the BOP to release Crenshaw to home confinement or a halfway house. But, the Court has the authority to reduce defendant's sentence to time served, with home confinement as a condition of supervised release, *if the sentence reduction is warranted*.

Therefore, I turn to consider defendant's contention that a sentence reduction is warranted.[4]

## B. Extraordinary and Compelling Circumstances

Defendant asks the Court to consider his "mental health and medical conditions" as the basis for a claim of extraordinary and compelling circumstances. ECF 58 at 1. He urges the Court to release him due to the Covid-19 pandemic, *id.*, although he does not specify the particular medical conditions that put him at risk due to Covid-19.

Additionally, Crenshaw states, *id.* (alterations added): "I accept all responsibliti[e]s of my offense and learned a valuable lesson in life doing hard time in the F.B.O.P[.] I have a great support system with 3 kids and a brother that got a job waiting for me at any moment. . . ." In his reply,

---

[4] Exhaustion is uncontested. In any event, given the length of time that the Motion has been pending, I would readily conclude that exhaustion is not an issue.

Crenshaw adds that he has accepted responsibility for his crime, apologized to the victim, and given his life to God. ECF 72 at 2.

The government contends that "Crenshaw has not shown 'extraordinary and compelling' circumstances under the [Center for Disease Control] risk factors [with respect to Covid-19] and the Sentencing Commission's Policy Statement that would make him eligible for relief due to his medical conditions." ECF 71 at 19 (alteration added).  It asserts: "The medical records indicate that all of Crenshaw's medical conditions are being monitored by the [prison] medical staff . . . and his conditions are being controlled and/or treated with appropriate medications." *Id*. Moreover, the government contends that, "even if Crenshaw's medical conditions rose to the level of 'extraordinary and compelling' circumstances, his risk of developing sever [sic] illness due to COVID-19 is mitigated due to Crenshaw's inoculation with a COVID-19 vaccine. . . ." *Id.*

Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *See Naming the Coronavirus Disease and the Virus that Causes It*, World Health Org., https://bit.ly/2UMC6uW  (accessed Oct. 19, 2023). On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020).  Two days later, on March 13, 2020, President Trump declared a national emergency.  *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19),* Trump White House (Mar. 13, 2020), https://perma.cc/WF55-8M4P.  That declaration was extended on several occasions. *See*, *e.g.*, 88 Fed. Reg. 9385 (Feb. 10, 2023).

By May 11, 2022, the United States "reached more than 1 million COVID-19 deaths, according to a Reuters tally, crossing a once-unthinkable milestone about two years after the first cases upended everyday life."  Trevor Hunnicutt & Jeff Mason, *Biden marks one million U.S.*

*COVID deaths after losing political battles*, Reuters (May 12, 2022), https://www.reuters.com/world/us/biden-marks-1-million-americans-dead-covid-2022-05-12/. And, as of March 10, 2023—the last day on which Johns Hopkins University updated its COVID-19 data—more than 103.8 million Americans had been infected with COVID-19. *See COVID-19 Dashboard*, The Johns Hopkins Univ., https://bit.ly/2WD4XU9 (accessed Oct. 16, 2023).

During the unfortunate length of time that the Motion has been pending, the urgency created by the COVID-19 pandemic has subsided. Indeed, on April 10, 2023, President Biden signed into law House Joint Resolution 7, "which terminate[d] the national emergency related to the COVID-19 pandemic." Pub. L. No. 118-3, 137 Stat. 6 (2023). Thus, there is no longer a federal public health emergency regarding COVID-19. *See* U.S.S.G. § 1B1.13(b)(1)(D)(i)(II) (contemplating an "ongoing public health emergency declared by the appropriate federal, state, or local authority . . .").

U.S.S.G. § 1B1.13(b)(1) is titled "Medical Circumstances of the Defendant." Crenshaw's assertions appear to implicate U.S.S.G. §§ 1B1.13(b)(1)(B), (C), and (D), which provide that an extraordinary and compelling reason for compassionate release exists if:

> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
>
> (D) The defendant presents the following circumstances--
>> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a

19

result of exposure to the ongoing outbreak of infectious disease or the
ongoing public health emergency described in clause (i); and
(iii) such risk cannot be adequately mitigated in a timely manner.

The outbreak of infectious diseases, such as COVID-19, is addressed in U.S.S.G. §
1B1.13(b)(1)(D). As of November 17, 2025, BOP data indicates that there were no COVID-19
cases among the inmates at USP McCreary.[5] *Inmate COVID-19 Data*, BUREAU OF PRISONS,
https://perma.cc/YMX7-KMGN (0 total COVID-19 cases at the facility as of November 17, 2025).
Moreover, USP McCreary's lack of Covid-19 cases has remained constant over the course of this
year. *Compare Inmate COVID-19 Data*, BUREAU OF PRISONS, https://perma.cc/P2MV-DFGB (0
total COVID-19 cases at the facility as of January 3, 2025), *with Inmate COVID-19 Data*, BUREAU
OF PRISONS, https://perma.cc/YMX7-KMGN (0 total COVID-19 cases at the facility as of
November 17, 2025). And, out of 1,518 inmates, 1,077 inmates are fully inoculated against Covid-
19. *Id.* Likewise, the defendant previously received the Pfizer vaccine. *See* ECF 71-3.[6]

In short, based on the lack of COVID-19 cases at USP McCreary, the facility is not
currently "affected" by or at "imminent risk of being affected by" an "ongoing outbreak" of
COVID-19. U.S.S.G. § 1B1.13(b)(1)(D)(i); *see United States v. Deleon*, LKG-16-267, 2024 WL
4555724, at *9 (D. Md. Oct. 23, 2024) (no extraordinary and compelling ground for compassionate
release where "the Petitioner is at no greater risk from Covid-19 than other . . . members of the
general public who have similar underlying health conditions."); *United States v. Rice*, JKB-04-
0323, 2022 WL 3083459, at *2 (D. Md. Aug. 3, 2022) (finding that although obesity and mild

---

[5] I cite to the COVID-19 data with respect to defendant's current location at USP
McCreary. https://www.bop.gov/inmateloc/ (search by name) (last accessed November 17, 2025).
However, defendant was previously incarcerated at USP Atwater, which had no COVID-19 cases
as of November 7, 2022. ECF 71 at 16 (citing *Inmate COVID-19 Data*, BUREAU OF PRISONS,
https://www.bop.gov/coronavirus/ (last accessed November 7, 2022)).

[6] The Court does not know if defendant has received updated vaccinations, as
recommended.

hypertension and other risk factors "may have been sufficient to establish an extraordinary and compelling reason at the outset of the pandemic, the Court concludes that they are insufficient to do so now); *United States v. Baeza-Vargas,* 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19. Given the absence of COVID-19 cases at USP McCreary, defendant has not established an extraordinary and compelling circumstance for compassionate release grounded in COVID-19.

That said, several of defendant's medical conditions would place him at an increased risk of severe illness from COVID-19, if an outbreak were to occur. The Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to the coronavirus. The CDC updated its guidance in June 2025 to reflect the most current data concerning medical conditions that pose a greater risk of severe illness due to COVID-19. *See People with Certain Medical Conditions and COVID-19 Risk Factors*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 11, 2025), https://perma.cc/HG73-FPSY.

According to the CDC, the factors that increase the risk of severe illness include cancer; chronic kidney disease; chronic liver disease; chronic lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, and pulmonary hypertension; cystic fibrosis; dementia or other neurological conditions; diabetes (Type 1 and Type 2); disabilities such as Down syndrome; heart conditions such as heart failure, coronary artery disease, cardiomyopathies, and possibly hypertension; hemoglobin blood disorders; HIV; being immunocompromised; liver disease; mental health conditions; having a Body Mass Index of 25 or higher; physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or

cerebrovascular disease; substance use disorders; and tuberculosis.  *People with Certain Medical Conditions and COVID-19 Risk Factors*, *supra*, https://perma.cc/P8QQ-4AUF.

As explained, defendant suffers, *inter alia*, from asthma and hypertension. ECF 71-2 at 8, 20, 22, 44, 51.  However, at this point, his health concern based on Covid-19 is largely theoretical because of the diminished presence of the virus.

Crenshaw also asks for relief on the basis of his mental health and medical conditions, in and of themselves.  ECF 58. As listed earlier, these conditions include Bipolar disorder, anxiety, asthma, Hepatitis B, and hypertension. ECF 58; *see* ECF 71-2 at 13, 15, 27, 42. The defendant need not be at death's door to establish an extraordinary and compelling reason for relief.

During the Covid-19 crisis, numerous courts have found extraordinary and compelling medical reasons for compassionate release based on conditions that are no more serious than the defendant's conditions.  *See, e.g.*, *United States v. Azianbidji*, PWG-17-253, 2021 WL 307416, at *1 (D. Md. Jan. 29, 2021) (defendant with hyperlipidemia, hypertension, and obesity); *United States v. Oaks*, RDB-17-288, 2020 WL 3433326, at *3 (D. Md. June 23, 2020) (defendant with Type II diabetes, hypertension, asthma, anemia, hyperlipidemia, and arthritis); *United States v. Hilow*, No. 15-170-JD, 2020 WL 2851086, at *4 (D. N.H. June 2, 2020) (involving asthma, migraines, hypertension, high cholesterol, prediabetes, and borderline obesity); *United States v. Gutman*, RDB-19-0069, 2020 WL 24674345, at *2 (D. Md. May 13, 2020) (finding defendant's age of 56 years, multiple sclerosis, and hypertension satisfied extraordinary and compelling reason); *United States v. Quintero*, 458 F. Supp. 3d 130, 132 (W.D.N.Y. 2020) (finding defendant's diabetes, compromised immune system, obesity, and hypertension constituted an extraordinary and compelling reason); *United States v. Coles*, No. 00-cr-20051, 2020 WL 1976296, at *7 (C.D. Ill. Apr. 24, 2020) (granting compassionate release to defendant with hypertension, prediabetes,

prostate issues, bladder issues, and a dental infection); *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (concluding that defendant's diabetes, hypertension, obesity, and age satisfied extraordinary and compelling reason).

However, as noted, there is currently no Covid-19 crisis. Nor does Crenshaw claim that his health conditions are deteriorating or that the BOP has failed to provide him with adequate medical care. Moreover, as discussed, *infra,* defendant's medical records show that his medical conditions have been effectively managed by the BOP.

For example, on September 13, 2021, during a Chronic Care Clinic exam, a medical provider noted that defendant's Hepatitis B was "stable, no symptoms, no complaints", and no issues were noted. *Id.* at 78.  Then, on December 12, 2021, defendant's provider wrote that defendant was "well-nourished, well-hydrated in no acute distress. There were no gross abnormalities, there is no signs of any psychomotor agitation." *Id*. at 67.

In 2022, medical personnel assessing defendant's appearance during physical examinations repeatedly recorded that he appeared to be well.  *Id.* at 3, 9, 13, 19, 22, 38, 43, 49.  In general, these exams reflect that Crenshaw's pulmonary system and his cardiovascular system were within normal limits. *Id.* at 4, 10, 14, 19, 23, 38, 43, 49. In addition, these records indicate that in 2022 defendant primarily sought treatment for a leg injury and for his anxiety. *See id*. at 18, 48, 60.

A Chronic Care Clinic visit occurred on January 14, 2022.  *Id.* at 51.  The medical note states, *id.*:

> The patient appeared well nourished and normally developed. Vital signs as documented. Head exam is unremarkable. Lungs are clear to auscultation with no wheezing or crackles. Cardiac exam reveals rhythm is regular. First and second heart sounds normal. No murmurs, rubs or gallops. Abdominal exam reveals normal bowel sounds, no masses, and no organomegaly.

23

The treatment provider noted that the defendant was on Amlodipine for hypertension, and he was "tolerating [it] well with no side effects." *Id.* (alteration added). Defendant reported that he had run out of Moestasone for his Asthma, and the provider ordered it for use "as needed." *Id.* However, defendant's viral load was elevated. *Id.* Therefore, the treatment provider wrote, *id.*: "We will obtain a new level and try to decide whether this needs to be treated."

A note on February 15, 2022, described a "general adult medical exam without abnormal findings. . . ." *Id.* at 39. The physician's assistant wrote that "Inmate Crenshaw is a 34 year old male here today for a follow up for right lateral ankle pain. . . .Denies any other concerns today. He also has a history of Hepatitis B and gets liver [ultrasounds] every 6 months." *Id.*

On March 21, 2022, following blood tests ordered to monitor defendant's liver, *id.* at 211–213, an ultrasound of the liver was ordered. *Id.* at 35. The ultrasound was conducted on April 4, 2022. It showed no evidence of fibrosis or cirrhosis. *Id.* at 205. The radiologist recorded that Crenshaw had mildly heterogenous liver of a normal size. ECF 71-2 at 204.

Crenshaw began a new treatment for his Hepatitis B on April 24, 2022. The record states, *id.* at 18: "He will start tenofovir disoproxil 300 mg daily. He is agreeable to starting treatment. He also reports having some left hip pain after getting down from the top bunk about one month ago. Denies any other injury."

Similarly, Crenshaw's mental health appears to have been stable, according to the records at that time. During the Chronic Care Clinic visit in January 2022, the provider noted that Crenshaw's bipolar disorder was "resolved" and that he had ceased taking medication for it. *Id.* at 51. By August 2022, Crenshaw's mental health provider was treating him solely for anxiety and prescribed Sertraline. ECF 71-2 at 4. Defendant had previously been prescribed Amitriptyline, *id.*

at 13, but a medical provider discontinued the prescription following suspected medication misuse. *Id.* at 6.

In April 2022, defendant's medical records reflect, *id.* at 22: "He notices anxiety more at night and it sometimes keeps him up. No SI/HI. Denies any other concerns." Additionally, his treatment notes record a single episode of major depressive disorder. *Id.* at 4.

On August 24, 2022, defendant's medical provider wrote, *id.* at 140: "Staff have denied any concerns regarding Inmate CRENSHAW's functioning in SHU, nor have any concerns been observed by psychology staff. The inmate has reported no mental health concerns." *See id.* at 144, 146, 145 ("No significant mental health issues").

Crenshaw's medical record reflects attentive care and frequent monitoring of defendant's medical and physical conditions. *See* ECF 71-2. There is no basis for compassionate release if a petitioner receives "comprehensive care" and has the "ability to care for himself in prison." *United States v. Freeman*, 617 F. Supp. 3d 386, 397 (E.D. Va. 2022), *aff'd*, 2023 WL 4797316 (4th Cir. July 27, 2023).

In sum, there is nothing in the record to suggest that Crenshaw's medical condition places him at risk if he remains incarcerated. On this record, I conclude that defendant has not established an extraordinary and compelling reason for compassionate release.

However, the Court is mindful that the defendant's medical records are not current, through no fault of the defendant. The records have not been updated during the pendency of the Motion. Therefore, my conclusion here is made without prejudice to defendant's right to seek reconsideration based, *inter alia,* on a change in his medical condition or a claim of inadequate medical care.

### C.  18 U.S.C. § 3355(a)

Even assuming, *arguendo*, that defendant established an extraordinary and compelling reason for compassionate release, that finding would not end the inquiry.  The Court must next consider the sentencing factors in 18 U.S.C. § 3355(a).  These include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

Crenshaw states that he has accepted responsibility for his offense and learned from his incarceration. ECF 58; ECF 72. He also contends that he has apologized to the victim and given himself to God. ECF 72.  However, beyond these general assertions, he supplies no examples as to how he has changed his life. *See* ECF 58; ECF 72. And, I previously considered Crenshaw's apology at his sentencing, stating, ECF  43 at 35: "I personally appreciate the remorse that you expressed."

To be sure, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture" of a defendant's "'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the

years since the[ ] initial sentencing[ ]." *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step Act, the district court must consider defendant's post-sentencing conduct); *Martin,* 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, "rehabilitation alone cannot constitute an extraordinary and compelling reason for release." *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022).

Notably, the government contends that Crenshaw "has not been a model inmate while in the custody of the Bureau of Prisons." ECF 71 at 28. Although Crenshaw's disciplinary records only date to 2022, he had several infractions as of that time. *See* ECF 71-4. These infractions include two serious charges of possession of a weapon, one in 2020 and one in 2021. *Id*. at 2. In 2021, Crenshaw possessed a 7.5 inch sharpened metal weapon. *Id.* This is a far cry from reform. To the contrary, given the history of this case, in which defendant stabbed the victim, defendant's unlawful possession of the weapon suggests that defendant would pose a danger to the safety of others if he were released.

27

The Court must consider the nature and circumstances of the offense.  An armed carjacking is itself a very violent offense.  But, in addition, defendant repeatedly stabbed the victim in the course of the commission of the carjacking. ECF 28, ¶ 6.  In the middle of the day, defendant approached the victim in the parking lot of Attman's Delicatessen, a popular restaurant in Baltimore. *See* ECF 43 (Sentencing Tr.), at 12. When the victim resisted, Crenshaw stabbed him four times: twice in his colon, once in his stomach, and once in the side of his leg. *Id.* Crenshaw then entered the victim's vehicle and drove off, *id.*, leaving the 76-year-old victim bleeding in the parking lot.  *Id.*; *see also* ECF 43 at 12.

Until the brutal attack, the victim had been healthy and fit. *Id.*  Following the attack, the victim underwent several surgeries that required him to spend weeks in the hospital. *Id.* at 12, 13, 14.  The victim developed multiple medical conditions resulting from the attack, was forced to retire from his job, and now suffers from anxiety.  ECF 43 at 14.  At sentencing, the victim remarked: "I will have to live with my permanent abdominal problem, and with the fact that I will never be the same. . . ." *Id.* at 14.

In sum, defendant committed a brutal and senseless attack on a stranger. *Id.* at 12. Notably, District courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor."  *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021).   Here, the gravity of this case is noteworthy and weighs heavily against release.

The government also notes that "Crenshaw has a well-established history of committing violent acts." ECF 71 at 29.  Defendant's criminal history is troubling.

In particular, as stated, defendant's criminal history dates to age 14.  *Id.* ¶ 38.  His prior record includes two violent offenses: a 2004 conviction for first degree assault and possession of

a handgun, *id.* ¶ 41, and another carjacking offense in 2011. *Id.* ¶ 45. With respect to the assault conviction in 2004, defendant fired a handgun at two victims. *Id.* ¶ 41. He received a sentence of ten years, of which nine years, two months, and four days were suspended. *Id.* For the handgun offense, defendant received a sentence of three years of incarceration, of which two years, two months, and four days were suspended. *Id.* In other words, defendant received a time-served sentence. *Id.* He also received five years of probation. *Id.*

On February 2, 2008, defendant was found to have violated probation. *Id.* He was sentenced to five years of incarceration for the assault, *id.* and to his back up time for the handgun count. *Id.* Defendant was mandatorily released on January 12, 2011. *Id.* Less than a month later, he committed a carjacking. *Id.* ¶ 45.

As to the 2011 carjacking conviction, defendant forced a victim out a car by threatening him with a knife. *Id.* He was sentenced to twelve years of incarceration, of which five years were suspended, followed by three years of probation. *Id.* Defendant was released from State custody in 2017. *Id.* ¶ 68. Defendant was still on probation when he committed the 2019 carjacking. *Id.*

Based on this review, it appears that the criminal justice system was quite lenient with defendant. Yet, defendant did not learn from what occurred or change his conduct. Rather, he failed to conform his conduct to societal expectations.

Additionally, defendant's sentence of 204 months of incarceration is in accordance with the terms of the C Plea. ECF 25, ¶¶ 8, 9. Defendant received what he bargained for. I remarked at sentencing, ECF 43 at 8: "[I]t appears the (C) plea is essentially in the middle of the guidelines." Regarding the length of the sentence, I observed, *id.* at 26: "It's certainly not unduly harsh, even had he not had an offense level of 31, in light of his own criminal history and the nature of the

offense." The length of the sentence is warranted to protect the public and to promote respect for the law.

It is also noteworthy that defendant has only served a little more than one third of his sentence.  As I see it, sentence reduction would not promote respect for the law.  The period of incarceration that Crenshaw has served to date is not sufficient to warrant a reduction in his sentence.

## IV.    Conclusion

Given the seriousness of Crenshaw's offense, a reduction in the sentence would not, in my view, promote respect for the law, provide just punishment, or deter criminal conduct.  *See* 18 U.S.C. § 3553(a)(2)(A)–(C).  Therefore, I shall deny defendant's Motion without prejudice.

An Order follows.


Date: November 21, 2025                              _____/s/_____

                                                    Ellen Lipton Hollander
                                                    United States District Judge